IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JASON STREET,
#R-09216,

    Plaintiff,

vs.

No. 17–cv–00334–DRH

DENNIS ELS,
ALLAN J. BRUMMEL,
ALFONSO DAVID,
MS. LECRONE,
KAREN SMOOT,
K. SEIP,
JEFFERY DENNISON,
SHERRY BENTON, and
WEXFORD HEALTH SOURCES,
INC.,

    Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Jason Street, an inmate who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings the instant civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). In the Complaint, Plaintiff claims that he has been denied adequate medical care for progressive vision loss associated with a right eye cataract, glaucoma, and keratoconus for more than two years at Shawnee. (Doc. 1, pp. 6-19). Plaintiff brings claims against the defendants under the Eighth Amendment. *Id.* He seeks money damages and a preliminary injunction. (Doc. 1, p. 19).

The Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## **Complaint**

According to the allegations in the Complaint, Plaintiff suffers from a right eye cataract and glaucoma. (Doc. 1, p. 6). Doctor Els, an eye doctor at Shawnee,

diagnosed him with these conditions in January 2015.  *Id*.  At the time, the doctor indicated that Plaintiff was "going blind," and there was "no possible chance" of correcting his right eye vision loss.  *Id*.

Plaintiff later learned that Doctor Els' opinion was incorrect and merely reflected the policy of his employer, Wexford Health Sources, Inc.  (Doc. 1, p. 6). According to the Complaint, Wexford has a longstanding policy of denying eye surgery to any prisoner who has "one good eye."  (Doc. 1, pp. 6, 18-19).  In other words, the private medical corporation will not approve surgery until a prisoner is blind in both eyes.  *Id*.  Doctor Els was aware of this policy when he told Plaintiff that surgery would not benefit him on January 8, 2015.  (Doc. 1, pp. 6-8). Plaintiff's vision subsequently deteriorated.  (Doc. 1, p. 7).

In February 2016, Plaintiff met with a different prison eye doctor named Doctor Brummel.  (Doc. 1, p. 7).  Doctor Brummel told Plaintiff that there was "a chance" that vision could be restored in his right eye by surgically removing the cataract and glaucoma.  *Id*.  However, the delay in surgical treatment foreclosed the option.  *Id*.  A corneal transplant was the only remaining option for restoring vision in Plaintiff's right eye.  *Id*.

On March 17, 2016, Plaintiff met with Doctor Umana at Marion Eye Center to discuss his progressive vision loss.  (Doc. 1, p. 8).  Doctor Umana diagnosed him with keratoconus, a slowly progressive ectasia of the cornea that is usually bilateral.  *Id*.  The condition necessitates frequent changes in eyeglass prescriptions due to changes in the shape of the cornea.  *Id*.  Contact lenses "may

provide better visual correction" in patients with this condition and are often tried when eyeglasses are not satisfactory. *Id*. A corneal transplant is indicated when contact lenses also fail to improve vision, when contacts are not tolerated by the patient, or when corneal scarring occurs. *Id*.

Plaintiff was fitted with contact lenses five different times, and four of them did not work. (Doc. 1, p. 8). The fifth also stopped working, after the right eye lens began causing pain, discomfort, and scarring. (Doc. 1, p. 9). Doctor Brummel referred Plaintiff to Doctor Fix at the Marion Eye Clinic for further evaluation on seven or eight separate occasions. *Id*. Each appointment yielded the same results, *i.e.*, a recommendation for a corneal transplant. *Id*. Doctor Umana requested authorization for a contact lens/evaluation before referring Plaintiff for the transplant. *Id*.

Despite the recommendations of these two outside providers, Doctor Brummel "never request[ed] surgery," telling Plaintiff that Wexford would not pay for it. *Id*. Instead, Doctor Brummel continued sending Plaintiff to Doctor Fix for new contact lenses, knowing that they would not help him. (Doc. 1, pp. 10-11). Doctor Brummel allegedly acted pursuant to the same unconstitutional policy espoused by Wexford of denying surgery in prisoners who have "one good eye." (Doc. 1, pp. 9-11).

Doctor Alfonso David, the medical director at Shawnee, was also directly involved in Plaintiff's treatment. (Doc. 1, p. 12). Doctor David, along with Doctor Brummel, approved the outside referral and lenses instead of surgery because of

Wexford's policy.  *Id.*  Doctor David's decision was motivated by costs concerns. (Doc. 1, p. 13).  He allegedly knew that contact lenses would not help.  (Doc. 1, pp. 12-13).

Plaintiff wrote letters to Ms. Lecrone, the prison nursing director, pleading for surgery.  *Id.*  Although she responded to Plaintiff's grievances dated February 26 and April 8, 2016, Ms. Lecrone ignored his letters.  *Id.*  In doing so, she allegedly "turn[ed] a blind eye" to Plaintiff's serious medical needs.  (Doc. 1, pp. 13-14).

Plaintiff also wrote several letters to Karen Smoot, the prison's health care administrator.  (Doc. 1, pp. 14-15).  Plaintiff informed her of the recommendation for surgery a year earlier.  (Doc. 1, p. 14).  However, he received no response to his correspondence.  *Id.*  He filed a grievance with Administrator Smoot on December 19, 2016, and she denied it without conducting an investigation.  (Doc. 1, p. 15).  She simply "agreed with Wexford."  *Id.*  Like Ms. Lecrone, Administrator Smoot also turned a blind eye to Plaintiff's serious medical needs. (Doc. 1, pp. 15-16).

Plaintiff notified Jeffery Dennison, the prison warden, about the denial of proper medical care for his degenerative eye disease.  (Doc. 1, p. 16).  Plaintiff spoke directly to the warden and directed grievances to him.  *Id.*  However, the warden claimed to have no authority over health care staff or treatment decisions. *Id.*

Likewise, K. Seip and Sherry Benton, a grievance counselor and a member of the Illinois Department of Corrections Administrative Review Board, took six months to review and deny Plaintiff's grievances and appeals. (Doc. 1, pp. 16-17). Both individuals allegedly failed to properly investigate Plaintiff's grievances. (Doc. 1, p. 17). Plaintiff claims that these individuals simply delayed responses and then denied the grievances, each time taking the side of Wexford. *Id.* In doing so, they allegedly approved, condoned, or turned a blind eye to Plaintiff's serious medical needs. *Id.*

Plaintiff blames the defendants for his vision loss and his prolonged pain and suffering. (Doc. 1, pp. 7-19). As a result of their alleged deliberate indifference, he suffered from "tremendous amounts of pain, light sensitivity, [and] blindness in his right eye" for more than two years. (Doc. 1, p. 7). He also suffered emotionally, experiencing "great anxiety, depression, and fear of permanently losing his sight." (Doc. 1, pp. 7-8). He became so depressed that Plaintiff was prescribed three different psychotropic medications, *i.e.*, Effexor, Haldol, and Cogentin. (Doc. 1, p. 10).

He seeks monetary relief against each defendant for violating his right to receive adequate medical care under the Eighth Amendment. (Doc. 1, p. 19). In addition, Plaintiff seeks a preliminary injunction, in the form of an order requiring the defendants to approve the corneal transplant surgery to repair his untreated keratoconus consistent with Doctor Umana's recommendation on March 17, 2016. *Id.*

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1** - Eighth Amendment deliberate indifference to medical needs claim against Doctor Els for denying Plaintiff adequate medical treatment for his right eye cataract and glaucoma in January 2015.

**Count 2** - Eighth Amendment deliberate indifference to medical needs claim against Doctors Brummel and David for ignoring Doctors Umana and Fix's recommendation for a corneal transplant and for instead referring Plaintiff for contact lenses beginning in March 2016.

**Count 3** - Eighth Amendment deliberate indifference to medical needs claim against the grievance officials (LeCrone, Smoot, Dennison, Benton, and Seip) for turning a blind eye to Plaintiff's letters and grievances seeking treatment of his cataract, glaucoma, and keratoconus.

**Count 4** - Eighth Amendment deliberate indifference to medical needs claim against Wexford for instituting a policy that prohibits any prisoner with "one good eye" from obtaining necessary eye surgery, resulting in the denial of adequate medical care to Plaintiff.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. These designations do not constitute an opinion regarding the merits of each claim.

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Deliberate indifference to serious medical needs of prisoners

constitutes cruel and unusual punishment under the Eighth Amendment. U.S. CONST., amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). A prisoner who wishes to bring a claim against state officials under the Eighth Amendment must show that the medical need at issue was sufficiently serious (*i.e.*, an objective standard) and state officials acted with deliberate indifference to the prisoner's health or safety (*i.e.*, a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The Seventh Circuit has held that a medical need is objectively "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Vision loss associated with cataracts or glaucoma satisfies the objective standard. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Moreover, when the failure to treat a condition could "result in further significant injury or the unnecessary and wanton infliction of pain," the condition is sufficiently "serious" to support an Eighth Amendment claim. *Id.* Plaintiff's progressive right eye vision loss that resulted from a cataract, glaucoma, and keratoconus is sufficiently serious to satisfy the objective component of his Eighth Amendment claims against the defendants at this stage.

To satisfy the subjective component of this claim, the Complaint must "demonstrate that prison officials acted with a 'sufficiently culpable state of

mind.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This state of mind is deliberate indifference, which is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834). The Eighth Amendment does not entitle prisoners to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Inadvertent error, negligence, gross negligence, and even ordinary malpractice do not give rise to an Eighth Amendment claim against a defendant. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *accord Berry*, 604 F.3d at 440 ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution.").

The allegations suggest that Doctors Els, Brummel, and David were directly involved in decisions regarding Plaintiff's medical treatment. Each doctor was aware of Plaintiff's diagnosis with a cataract, glaucoma, and keratoconus in his right eye but ignored the recommendations of specialists for surgery. The Seventh Circuit has held that "a difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). However, a medical

opinion or recommendation that is "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment" will support a deliberate indifference claim against a medical professional. *Id*. at 397. The allegations suggest that the opinions of Doctors Els, Brummel, and David fell into the latter category. Accordingly, Count 1 shall proceed against Doctor Els, and Count 2 shall proceed against Doctors Brummel and David.

The allegations also suggest that that the grievance officials, including LeCrone, Smoot, Dennison, Benton, and Seip, were alerted to Plaintiff's progressive vision loss in written correspondence and grievances they received from him. Plaintiff notified each of them that surgery was recommended as the only effective form of treatment. However, each grievance official turned a blind eye to Plaintiff's serious medical needs. An inmate's correspondence to grievance officials may establish a basis for personal liability under § 1983, if the correspondence "provides sufficient knowledge of a constitutional deprivation." *Perez v. Fenoglio*, 792 F.3d 776, 781 (7th Cir. 2015) (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). Once an official is "alerted to an excessive risk to inmate safety or health through a prisoner's correspondence," the decision to disregard the risk or deny access to medical care may amount to deliberate indifference. *Id*. This includes instances in which a plaintiff's grievances fall on "deaf ears." *Id*. (citing *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997)). In

light of *Perez*, the Court cannot dismiss the Eighth Amendment claim in Count 3 against LeCrone, Smoot, Dennison, Benton, and Seip.

Finally, the allegations suggest that proper medical treatment was denied because of Wexford's "one good eye" policy, which prohibits surgery in any inmate who has sight in one eye. A private corporation like Wexford will usually only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez*, 792 F.3d at 780 (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). *See also Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Plaintiff characterizes Wexford's "one good eye" policy as the "cause" and the "driving force" behind the deprivation of his Eighth Amendment rights in this case. Accordingly, Count 4 shall proceed against Wexford at this time.

## Pending Motions

1. **Motion for Leave to Proceed** *in forma pauperis* **("IFP Motion") (Doc. 2)**
   Plaintiff's IFP Motion shall be addressed in a separate court order.

2. **Motion for Recruitment of Counsel (Doc. 3)**
   Plaintiff's Motion for Recruitment of Counsel shall be **REFERRED** to a United States Magistrate Judge for a decision.

3. **Motion for Preliminary Injunction (Doc. 4)**
   Plaintiff's Motion for Preliminary Injunction shall also be **REFERRED** to a United States Magistrate Judge for further consideration.

## Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendant **DENNIS ELS**; **COUNT 2** is subject to further review against Defendants **ALLAN J. BRUMMEL** and **ALFONSO DAVID**; **COUNT 3** is subject to

further review against Defendants **MS. LECRONE, KAREN SMOOT, JEFFERY DENNISON, K. SEIP,** and **SHERRY BENTON**; and **COUNT 4** is subject to further review against Defendant **WEXFORD HEALTH SOURCES, INC.** These claims are **DISMISSED** with prejudice against those defendants who are not named in connection with said claims.

As to **COUNTS 1, 2, 3,** and **4**, the Clerk of Court shall prepare for Defendants **DENNIS ELS, ALLAN J. BRUMMEL, ALFONSO DAVID, MS. LECRONE, KAREN SMOOT, K. SEIP, JEFFERY DENNISON, SHERRY BENTON,** and **WEXFORD HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be

retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3) and consideration of his Motion for Preliminary Injunction (Doc. 4).

Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is

granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Signed this 19th day of April, 2017.

Digitally signed by Judge David R. Herndon
Date: 2017.04.19 11:20:58 -05'00'

**UNITED STATES DISTRICT JUDGE**