IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JASON STREET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-334-SMY |
| | ) |
| DENNIS ELS, and | ) |
| KAREN SIKORSKI, | ) |
| Independent Administrator of the Estate of | ) |
| Allan J. Brummel, | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Jason Street, an inmate currently incarcerated at Dixon Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights arising from alleged deliberate indifference to his serious medical needs while he was housed at Shawnee Correctional Center ("Shawnee"). This matter is before the Court for consideration of Defendants' Motions for Summary Judgment (Docs. 203 and 206) and Plaintiff's Motion for Summary Judgment against both remaining defendants (Doc. 210). All parties have responded in opposition (Docs. 212-215). For the following reasons, Defendants' Motions (Docs. 203 and 206) are **GRANTED** and Plaintiff's Motion (Doc. 210) is **DENIED.**

## Material Facts

Plaintiff was first seen by Defendant Dr. Els on July 10, 2014 at Shawnee. (Doc. 211-1, p. 31). Dr. Els, an optometrist then contracted by Wexford Health Sources, Inc. to provide eye care to prisoners, diagnosed Plaintiff with a mild cataract in his right eye and an "insignificant" cataract in his left eye. (*Id.*). He prescribed glasses which corrected his vision to 20/20 and continued observation. (*Id.*, pp. 33-35).

Dr. Els saw Plaintiff again on January 8, 2015. His vision had worsened in both eyes to the point his right eye was 20/80 and his left eye was 20/30 with glasses. (*Id.*, pp. 38-39). Dr. Els attributed the worsening vision to the cataracts. (*Id.*, pp. 39-40). Dr. Els did not consider Plaintiff a good surgical candidate at that time because he still had overall good vision. (*Id.*, pp. 88-90). Instead, he prescribed a new lens for the left eye and continued monitoring. Dr. Els ceased contracting with Wexford in March 2015 and did not see Plaintiff after the January 2015 visit. (*Id.*, p. 86).

In January 2016, Plaintiff followed up with Defendant Dr. Brummel (now deceased). (Doc. 211-3, p. 10). Dr. Brummel suspected that Plaintiff had keratoconus and referred him to an outside ophthalmologist, Dr. Ukeme Umana, who confirmed the diagnosis. (*Id.*). Dr. Umana recommended surgery for Plaintiff's right eye. (Doc. 211-2, p. 16). Kim Johnston, a Wexford employee, later called Dr. Umana's office and received confirmation that hard contact lenses would also be an appropriate treatment. (Doc. 207-3, pp. 13-14). Dr. Brummel referred Plaintiff to outside specialist, Dr. William Fix, to be fitted with hard contact lenses. (Doc 211-3, p. 11). Over the course of the next several months, Drs. Fix and Brummel made a number of attempts to fit Plaintiff with the lenses. (*Id.*, p. 19). Plaintiff ultimately had corneal transplant surgery in January 2018. (*Id.*, p. 12).

Dr. Walter Jay, an ophthalmologist, was retained by Dr. Els as an expert witness in this case. He testified that at the time of Plaintiff's last visit with Dr. Els, the keratoconus was "mild to moderate at that point" and that "even a competent, highly qualified ophthalmologist slash optometrist could miss it at that stage." (Doc. 211-4, pp. 7-8). As to whether Dr. Els should have referred Plaintiff to a specialist after the January 2015 exam, "the standard of care could have been either way" in his opinion. (*Id.*, p. 8-9). He also testified that the standard of care for cataracts

with one eye at 20/80 vision could be either to recommend surgery or continue to observe it. (*Id.*, 21). In his opinion, while treatment with rigid contract lenses does not stop the progress of the disease, attempting rigid contacts as a treatment for moderate to severe keratoconus is a reasonable approach given the risks of surgery; he himself would "prefer something like…trying the contacts first, because there's less risk involved." (*Id.*, pp. 15-16).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Prison officials inflict cruel and unusual punishment in violation of the Eighth Amendment when they are deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, an inmate must establish (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). A

serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The second element requires proof that the defendant knew of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference. *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

"Mere negligence or even gross negligence does not constitute deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). Rather, in the prison context, a medical professional "may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008).

Relatedly, "an inmate is not entitled to demand specific care," *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011), and medical professionals may choose from "a range of acceptable courses based on prevailing standards in the field," *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Deference is given to medical professionals' treatment decisions unless there is evidence that "no minimally competent professional would have so responded under those circumstances." *Walker v. Wexford Health Sources, Inc*., 940 F.3d 954, 965 (7th Cir. 2019) (citations omitted).

### Dr. Els

The undisputed material facts establish that while Dr. Els unquestionably misdiagnosed Plaintiff's condition, he was not deliberately indifferent to Plaintiff's condition. A mistaken diagnosis alone does not suffice. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("It is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard

that need in order to be held deliberately indifferent."). Dr. Jay, the only retained expert in this case, testified that such a misdiagnosis is easy to make at the stages of keratoconus Dr. Els confronted and with the equipment available at the prison.

Plaintiff argues, however, that Dr. Els was deliberately indifferent by not referring him to a specialist, either because he did not have adequate equipment to diagnose keratoconus or for care based on his mistaken belief that Plaintiff was suffering from cataracts. But "[a] prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care. Like other medical decisions, the choice whether to refer a prisoner to a specialist involves the exercise of medical discretion, and so refusal to refer supports a claim of deliberate indifference only if that choice is blatantly inappropriate[.]" *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (quotations and citations omitted). Plaintiff has produced no evidence to show that Dr. Els' decision to monitor his condition rather than referring him to a specialist was inappropriate, let alone blatantly so. While Dr. Els testified that he would have performed a test which would have diagnosed Plaintiff correctly if he had the equipment at his private office (Doc. 211-1, pp. 36, 69-70), that is insufficient to support a finding of deliberately indifference on his part. That the initial diagnosis might have been accurate if Plaintiff were a member of the general public who came to Dr. Els' private practice is not determinative; prisoners are entitled to constitutionally adequate care, not the best care possible. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The unrefuted evidence is that the standard of care could reasonably encompass both Dr. Els' decision not to refer Plaintiff to a specialist and his decision to continue to observe rather than recommend surgery. As such, there is no basis upon which a reasonable factfinder could conclude that Dr. Els was deliberately indifferent to Plaintiff's medical needs.

### Dr. Brummel

The undisputed material facts also establish that Dr. Brummel was not deliberately indifferent to Plaintiff's medical condition. He correctly surmised that Plaintiff's issue was keratoconus and referred him to an outside specialist. Dr. Umana confirmed the diagnosis and recommended surgery but agreed that treatment with rigid contacts was also appropriate. While a prison physician is not required to follow an outside physician's recommended course of care, ignoring the recommendations of an outside provider may constitute deliberate indifference if doing so would result in the provision of such inadequate care that no reasonable medical official would agree with the course of action taken. *Perez v. Fenoglio*, 792 F.3d 768, 778-79 (7th Cir. 2015). Here, Plaintiff has produced no evidence that no reasonable medical professional would agree with Dr. Brummel's course of treatment.

Although Dr. Umana thought surgery was a better option to treat Plaintiff, he agreed that treatment with rigid contact lenses was also appropriate. And, the retained expert, Dr. Jay opined that treatment with rigid contact lenses for moderate to severe keratoconus is a reasonable approach given the risks of surgery – an approach he himself generally prefers as an initial treatment plan. There is no evidence to suggest that Dr. Brummel persisted with the rigid contact lens treatment beyond a reasonable point. Therefore, there is no basis upon which a jury could reasonably conclude that Dr. Brummel was deliberately indifferent to Plaintiff's medical needs.

### CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 203 and 206) are **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 210) is **DENIED.** Plaintiff's claims are **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close the case.

**IT IS SO ORDERED.**

**DATED: April 14, 2020**

                                            **s/ Staci M. Yandle**
                                            **STACI M. YANDLE**
                                            **United States District Judge**